1  Barbara A. Blackburn, Bar No. 253731
   bblackburn@littler.com
2  Douglas L. Ropel. Bar No. 300486
   dropel@littler.com
3  Lauren J. Orozco, Bar No. 332880
   lorozco@littler.com
4  LITTLER MENDELSON, P.C.
   500 Capitol Mall, Suite 2000
5  Sacramento, California 95814
   Telephone:    916.830.7200
6  Fax No.:      916.561.0828

7  Attorneys for Defendant
   ENLOE MEDICAL CENTER
8

9

                    UNITED STATES DISTRICT COURT
10
                    EASTERN DISTRICT OF CALIFORNIA
11

12

13  CHRISTIAN LOVGREN and GINA CUNEO,          Case No.
    on behalf of the State of California, as private
14  attorneys general,                          *[Removed from Butte Superior Court Case No.
                                                24CV00490]*
15                     Plaintiffs,
                                                **NOTICE TO FEDERAL COURT OF
16            v.                                REMOVAL OF CIVIL ACTION**

17  ENLOE MEDICAL CENTER, a California          **[28 U.S.C. §§ 1331, 1441, and 1446]**
    Corporation; and DOES 1 through 50, inclusive,
18                                              Trial Date:      Not Yet Set
                       Defendants.              Complaint Filed:  February 13, 2024
19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

1  **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**
2  **EASTERN DISTRICT OF CALIFORNIA, PLAINTIFFS CHRISTIAN LOVGREN AND**
3  **GINA CUNEO, AND THEIR ATTORNEYS OF RECORD:**

4       **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1441(a) and 1446, Defendant
5  ENLOE MEDICAL CENTER ("Enloe") hereby removes the above-captioned action from the
6  Superior Court for the State of California, in and for the County of Butte, to the United States District
7  Court, Eastern District of California.  Removal is proper based on 29 U.S.C. § 185(a).  This action is
8  removed pursuant to the procedures found in 28 U.S.C. §§ 1441 and 1446, and removal jurisdiction is
9  based on federal question pursuant to 28 U.S.C. § 1331.

10  **I.  PROCEDURAL BACKGROUND**

11       On February 12, 2024, Plaintiffs Christian Lovgren and Gina Cuneo ("Plaintiffs") filed a
12  Complaint in the Superior Court of the State of California, County of Butte, which is captioned as
13  follows: *Christina Lovgren and Gina Cuneo, on behalf of the State of California, as private attorneys*
14  *general, v. Enloe Medical center, a California Corporation, and Does 1 through 50, inclusive*, Case
15  No. 24CV00490 ("Complaint").  The Complaint contains a single cause of action, seeking civil
16  penalties under the Private Attorney's General Act ("PAGA") (Cal. Lab. Code § 2699 et seq.) for
17  Defendant's alleged "violation of California Labor Code §§ 201, 202, 203, 204 *et seq.*, 210, 218, 221,
18  226(a), 226.7, 227.3, 246, 510, 512, 558(a)(1)(2), 1194, 1197, 1197.1, 1198, 2802, California Code of
19  Regulations, Title 8, Section 11040, Subdivisions 5(A)-(B), California Code of Regulations, Title 8,
20  Section 1 1070(14), and the applicable Wage Order(s).  (Compl., *passim*.)  In other words, the
21  Complaint seeks PAGA penalties based on underlying alleged Labor Code violations related to
22  overtime, minimum wage, timing of pay, meal breaks, rest breaks, final pay, sick pay, wage
23  statements, expense reimbursement, and suitable seating.  These PAGA penalties are purely and
24  entirely derivative of the underlying alleged Labor Code violations.  Defendant filed its Answer on
25  April 16, 2024. Declaration of Barbara Blackburn ("Blackburn Decl.") **Exhibit 2** (Defendant's
26  Answer).

27       Notably, this case (Butte County Case No. 24CV00490) is closely related to, and inextricably
28  intertwined with a case by the same name, with the same parties, Butte County Case No. 24CV00200,

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

2

which Defendant is also removing to this Court on the same day.  Defendant will file Notice(s) of Related Case, pursuant to E.D. Cal. Local Rules, forthwith.

True and correct copies of the: (1) Summons; (2) Complaint; (3) Civil Case Cover Sheet; (4) Notice of Assignment and Case Management Conference; and (5) Alternative Dispute Resolution Packet are attached to the supporting Blackburn Decl. as **Exhibit 1**.

As of the date of this Notice of Removal, no other parties have been named or served with the Summons and Complaint, to Defendant's knowledge.

## II.    REMOVAL JURISDICTION

This Court has jurisdiction because a federal question exists under Section 301 of the Labor Management Relations Act ("LMRA"), which provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this [Act], or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185(a) (hereinafter, "Section 301").

Section 301 preemption and jurisdiction apply because the Complaint includes claims that can only be brought as contractual claims under a collective bargaining agreement ("CBA"), because of the application of express CBA exemptions in the California Labor Code.  Section 301 also applies because Plaintiffs assert they are entitled to relief which is controlled by the CBA and make claims the resolution of which require interpretation of the CBA.

If any claims in the Complaint are not preempted by Section 301, the entire action is still removable under 28 U.S.C. § 1441(c) because this Court has supplemental jurisdiction under 28 U.S.C. § 1367.  All claims in the Complaint are sufficiently related to form part of the same case or controversy.

## III.    REMOVAL PROCEDURE

### A.    Venue is Proper in This District

Plaintiffs filed this action in the Superior Court of California, County of Butte.  Therefore, pursuant to 28 U.S.C. §§ 84(a), 1391, and 1441(a), venue properly lies in the United States District Court for the Eastern District of California.

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                                    3

**B.    This Removal is Timely**

Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because Defendant filed it within thirty (30) days after the service of the Summons and Complaint filed in the State Court Action. Service occurred on March 18, 2024.  Blackburn Decl., **Exhibit 1**.  This Notice of Removal is timely filed within thirty (30) days thereafter.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48, 354 (1999) (holding removal period is triggered by completed service of process).

**C.    The Parties, the Union and the Relevant Collective Bargaining Agreements.**

Enloe is a company engaged in an industry affecting commerce within the meaning of the National Labor Relations Act (the "NLRA").  29 U.S.C. §§ 152(2), (6), (7), and 185(a).  The Service Employees International Union (the "SEIU") and the California Nurses Association (the "CNA," and collectively with the SEIU, the "Unions") are labor organizations under the NLRA and LMRA.  29 U.S.C. §§ 152(5) and 185(a).  Enloe and the Unions, at all relevant times, have been parties to separate collective bargaining agreements ("CBA").

At all relevant times during his employment with Enloe, Plaintiff Lovgren was a Union–represented employee represented by the SEIU and subject to the SEIU CBA.  Devor Decl., at ¶ 5. The SEIU CBA was applicable to Plaintiff Lovgren's employment, as well as the employment of approximately one third of the putative class.  *Id*.  A true and correct copy of the SEIU CBA is attached to the Devor declaration as **Exhibit A**.  *Id*. at ¶ 4; *see also* Defendant's Request for Judicial Notice [RJN] at ¶ 1.

The CNA CBA was applicable to the employment of another one third (approximately) of the putative class, including all nurses employed by Enloe.  Devor Decl., at ¶ 13.  A true and correct copy of the CNA CBA in effect during the time at issue in this lawsuit, along with the agreements to extend the CNA CBA through May 4, 2024, are attached to the Devor declaration as **Exhibits B** and **C**.  *Id*. at ¶ 12; *see also* Defendant's Request for Judicial Notice [RJN] at ¶ 2.

**D.    This Court has Jurisdiction Under Section 301**

This Court has jurisdiction because a federal question exists under Section 301 of the Labor Management Relations Act ("LMRA"), which provides:

> "Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting commerce

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    4

1   as defined in this [Act], or between any such labor organizations, may
2   be brought in any district court of the United States having jurisdiction
    of the parties, without respect to the amount in controversy or without
3   regard to the citizenship of the parties." 29 U.S.C. § 185(a) (hereinafter,
    "Section 301").

4   Section 301 preemption and jurisdiction apply, because the Complaint includes claims that can

5   only be brought as contractual claims under a collective bargaining agreement ("CBA") as a result of

6   multiple, express collective bargaining agreements exemptions in the California Labor Code.  Section

7   301 also applies because Plaintiffs assert they are entitled to relief that is controlled by the CBA and

8   makes claims of which the resolution require interpretation of the CBA.

9   If any claims in the Complaint are not preempted by Section 301, the entire action is still

10  removable under 28 U.S.C. § 1441(c), because this Court has supplemental jurisdiction under 28

11  U.S.C. § 1367.  All claims in the Complaint are sufficiently related to form part of the same case or

12  controversy.

13  **IV.    FACTUAL BACKGROUND**

14  **A.    Plaintiff Lovgren's Employment[1]**

15  Enloe employed Plaintiff Lovgren as a Pharmacy Tech (Driver).  Devor Decl., ¶ 3.  In this

16  position, his employment was governed by the CBA.  *Id.* at ¶ 4.  In his role as Pharmacy Tech (Driver),

17  from June 26, 2020, through June 27, 2021, Plaintiff Lovgren's base wages under the SEIU CBA were

18  $26.53 and $27.22.  *Id.* at ¶ 6.  From June 28, 2021, through June 26, 2022, Lovgren's base wages

19  under the SEIU CBA were $27.22 and $27.90.  *Id.*  From June 27, 2022, through the end of his

20

21  [1]   While Plaintiff Cuneo was not subject to a CBA, courts have readily enforced removal of PAGA
22  claims brought on behalf of a group of unionized employees, even where the named plaintiff was not
    a member of any union.   In *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, No.
    CV2109959MWFAGR, 2022 WL 707206 (C.D. Cal. Mar. 8, 2022), a PAGA-only case, defendant
23  had removed based on LMRA preemption, even though plaintiff was not a party to the CBA.  The court
    denied plaintiff's motion to remand, reasoning that "[e]ven if Plaintiff and the State are not parties to
24  the qualifying CBAs, the Court must still interpret the agreements to determine whether a violation
    occurred as to the Aggrieved Employees.  Indeed, that is the only basis upon which the State of
25  California could recover penalties under the facts of this case.  Where, as here, a plaintiff files suit on
    behalf of employees covered by a qualifying CBA, her own lack of CBA coverage is not a defense to
26  preemption under *Curtis*." *Id.* at *4.   Likewise, courts have granted summary adjudication of such
    PAGA claims brought on behalf of a group of unionized employees, even where the named plaintiff
27  was not a member of any union.  *See Shwiyat v. Martin Marietta Materials, Inc*., 2023 U.S. Dist.
    LEXIS 226843 (N.D. Cal., Corley, Dec. 20, 2023) (granting in part summary judgment to Defendant
28  on meal, rest, overtime, and related derivative claims as to members of the putative PAGA cohort who
    were union-represented employees, even where plaintiff was not).

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                                              5

employment on June 12, 2023, Lovgren's base wage rates under the SEIU CBA were $28.74 and $29.46. *Id.* At all relevant times, Plaintiff Lovgren's wage rate under the CBA was in excess of 130% of the California minimum wage.

**B.    Relevant Collective Bargaining Agreement Provisions – SEIU CBA**

The term of the SEIU CBA in effect during the years relevant to this case was July 1, 2021, through June 20, 2024.  Devor Decl., ¶ 4, **Exhibit A**.  Excerpts from the provisions of the SEIU CBA relevant to this Removal include the following:

**1.    Wage Rates and Overtime**

**ARTICLE 11, WORKWEEK. Section A, Definition of Overtime.**

**1.**    The employee's workday and workweek shall be designated by the Employer. The Employer's workday shall be twenty-four consecutive hours beginning at 12:00am. The Employer's workweek shall be a consecutive period of seven (7) days, beginning at 12:00am on Sunday.

**2. For employees on eight (8) hour shifts.**    Straight-time hourly rates shall apply up to a maximum 80 hours per 14 day period, or eight (8) hours per day. All work in excess of eight (8) hours in a workday or 80 hours in a 14 day pay period shall be paid at the rate of one and one-half times (1-½) the regular straight-time hourly rate. All work in excess of twelve (12) hours per workday shall be paid at the rate of two times (2x) the regular straight-time hourly rate.

**3. For employees on ten (10) hour shifts.**    Straight-time hourly rates shall apply up to a maximum forty (40) hours per workweek, or ten (10) hours per day. All work in excess of forty (40) hours in a workweek shall be paid at the rate of one and one-half times (1-½) the regular straight-time rate. All work in excess of ten (10) hours in a workday, up to twelve (12) hours, shall be paid at the rate of one and one- half times (1-½) the regular straight-time hourly rate. All work in excess of twelve (12) hours in a workday shall be paid at the rate of two times (2x) the regular straight-time rate.

**4. For employees on twelve (12) hour shifts.**    Straight-time hourly rates shall apply up to a maximum forty (40) hours per workweek, or twelve (12) hours per workday. All work in excess of forty (40) hours in a workweek shall be paid at the rate of one and one-half times (1-½) the regular straight-time rate. All work in excess of twelve (12) hours per workday, shall be paid at the rate of two times (2x) the regular  straight time hourly rate.

**5.    No Pyramiding.**    There shall be no pyramiding or compounding of overtime pay, meaning that there shall be no more than one overtime premium rate paid for the same hours worked. As an example, an employee paid at the overtime premium rate for daily overtime worked shall not receive an additional premium for weekly overtime if the daily overtime worked and paid at overtime causes the weekly hours to exceed forty (40).

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    6

Devor Decl., **Exhibit A**, SEIU CBA, Article 11(A) at pp. 11-12.

**ARTICLE 11, WORKWEEK. Section B, Consecutive Shifts.**

1.  When an employee works two (2) full consecutive shifts, totaling fifteen and one-half (15-½) hours, the second shift will be compensated at one and one half (1-½) the regular straight-time wage rate, up to twelve (12) hours, and at double-time (2x) for all work in excess of twelve (12) consecutive hours.  No employee shall be required to work two (2) shifts within a period of twenty-four (24) hours except in cases of emergency. "Emergency" is defined under the "Mandatory Overtime" section of this Agreement.

2. The definition of workweek or workday is not intended to avoid overtime payments for consecutive hours/shifts worked beyond the defined period.

Devor Decl., **Exhibit A**, SEIU CBA, Article 11(B) at p. 12.

**ARTICLE 11, WORKWEEK. Section D, Alternative Workweeks.** The parties agree to maintain all existing alternative workweek schedules currently in effect unless terminated by the Employer upon forty-five (45) days advance notice to the Union and affected employees, or by the affected employees upon a two-thirds (2/3) vote of the affected employees to terminate such arrangement. Should any new group of employees petition to work either ten (10) or twelve (12) hour shifts, the Employer shall grant due consideration to the feasibility of the request. Should it be determined that the request is feasible, then the parties will meet as soon as possible to agree on schedules and a date to conduct a joint secret ballot election of affected employees. A two-thirds (2/3) vote of the affected employees shall be required to establish the new alternative workweek. In cases of hardship, employees may request, and shall be granted whenever practicable, to continue their same shift in a unit or work area that converts to alternative scheduling, or to transfer to a unit or department that has an available schedule that meets the employee's needs.

Any new alternative workweek schedules require that the Employer first meet and bargain with the Union to arrive at a mutually satisfactory schedule and other issues related to the implementation of the new schedules.

Devor Decl., **Exhibit A**, SEIU CBA, Article 11(D) at p. 13.

**ARTICLE 22, CLASSIFICATION AND WAGES.** The minimum straight-time hourly rates of pay shall be shown in the Wage Scales of Appendices A, B, and C (attached hereto and made apart hereof).

Devor Decl., **Exhibit A**, SEIU CBA, Article 22 at p. 38, Appendices A-C.

**ARTICLE 22, CLASSIFICATION AND WAGES. Section E(1) Payday.**

a. All wages shall be paid on the basis of two-week payroll periods.

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

b. The Employer' payday is on a Friday and this shall continue as the designated payday. Direct deposit shall continue to be offered to all employees and shall be deposited by no later than the designated payday and earlier if practicable. For those employees unable to have direct deposit at a bank or credit union, debit cards may also be used to directly deposit their paycheck. All paychecks and paystubs that are mailed shall be deposited in First Class U.S. Mail by 12:00 noon on the Thursday before payday.

c. When a holiday recognized by this Agreement falls on a payday, the employer will make every reasonable effort to provide the employees' checks on the day before the payday.

d. If the Employer uses symbols on payroll checks, such symbols shall be explained to an employee upon request. All records of paid time off accounts shall accurately reflect balances through the most recent pay period ending the date of the check.

e. Paycheck Errors. Paycheck errors resulting in underpayments of greater than eight hours pay shall be corrected immediately and a new check for the underpayment shall be issued to the employee within twenty-four (24) hours of the error being reported to the payroll department of the Employer, unless the error is reported on a Friday, in which case a new check will be available by noon (12pm) the following Monday.

Devor Decl., **Exhibit A**, SEIU CBA, Article 22, Section E (1)(a)-(e) at p. 39.

**2.    Meal and Rest Periods**

**ARTICLE 11. WORKWEEK, Section F. Rest and Meal Periods.** Employees who work scheduled shifts of five (5) hours or more are entitled to a duty-free, unpaid meal period of at least thirty (30) minutes. Employees who work in excess of five (5) hours but less than six (6) hours may voluntarily waive the meal period. Each employee shall be granted a paid rest period of ten (10) minutes per four (4) hours of work, or major fraction thereof. Employees who work twelve (12) hour shifts will be permitted to take three (3) ten (10) minute rest periods and will be given one (1) uninterrupted unpaid meal period of thirty (30) minutes during the first five (5) hours of the shift, and one (1) additional unpaid meal period of thirty (30) minutes during the second work period thereafter; however either the first or the second unpaid meal period may be waived in writing by the employee.

Devor Decl., **Exhibit A**, SEIU CBA, Article 11(F) at p. 13.

**3.    Request for Records**

**ARTICLE 30. DISCIPLINE AND DISCHARGE, Section F. Disciplinary Notices, Rebuttal and Inspection of Personnel Files.**    1. There shall be one official personnel file for all bargaining unit employees and they shall have the right to inspect and to be provided, on request, with

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                                8

one copy of any document in the employee's personnel file.

Devor Decl., **Exhibit A**, SEIU CBA, Article 11(F) at p. 54.

### 4.    Paid Time Off and Sick Leave

**ARTICLE 16. PAID TIME OFF (PTO) AND EXTENDED SICK LEAVE (ESL).**  The Employer will continue to provide employees with a Paid Time Off (PTO) plan which may be used for vacation, holidays, religious observances, personal or family business, maternity, disability or illness, health or dental appointments, and as supplement pay to State Disability, Family Temporary Disability or Workers' Compensation, or other reasons deemed appropriate by the employee and in compliance with the provisions of this Agreement. In addition, the Employer will continue to provide eligible employees with an Extended Sick Leave (ESL) Plan, to be used in accordance with the provisions of this Agreement for severe or long-term illness or injury.

Devor Decl., **Exhibit A**, SEIU CBA, Article 16 at p. 23.

**ARTICLE 16. PAID TIME OFF (PTO) AND EXTENDED SICK LEAVE (ESL), Section D. Use of PTO/ESL.**  1. PTO will be used for all paid time off, including the first 24 scheduled work hours of any illness, unless the absence qualifies for immediate use of ESL as outlined in Section D.6.C. of this Article, and with the exception of Jury Duty, Bereavement Leave, and Paid Educational Leave. [. . .] 3. PTO and ESL will be paid at the base rate and will include shift differentials.

Devor Decl., **Exhibit A**, SEIU CBA, Article 16(D)(1), (3) at p. 23.

### 5.    Payment Upon Termination

**ARTICLE 16. PAID TIME OFF (PTO) AND EXTENDED SICK LEAVE (ESL), Section J. Payment of PTO and ESL on Termination or Retirement.**  1. Eligible employees will be paid their accrued, unused PTO through the last day worked at their current rate of pay, including shift differential, and the employee's PTO accrual rate will be reinstated if the employee is rehired into a benefited position within one (1) year. 2. Accrued ESL will be paid to employees at termination or retirement if the employee became a regularly scheduled employee of the Employer on or before May 31, 1998, and is continuously employed by the Employer for twenty (20) years as of the date of retirement or termination. 3. Except as provided in J.2. above, ESL will not be paid upon termination of employment. However, if an employee is re-employed in a benefited position within one (1) year, the employee's accrued ESL at the time of the termination will be reinstated.

Devor Decl., **Exhibit A**, SEIU CBA, Article 16(J) at p. 27.

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

9

6. **Grievance and Arbitration**

> **ARTICLE 29. GRIEVANCE AND ARBITRATION, Section A. Definition of Grievance.** Grievance means a dispute raised by an employee, the Union or the Employer concerning the interpretation or application of any provision in this Agreement. Unless otherwise provided in this Agreement, a violation of this Agreement is subject to this Grievance and Arbitration Procedure set forth below.

Devor Decl., **Exhibit A**, SEIU CBA, Article 29(A) at p. 49.

> **ARTICLE 29. GRIEVANCE AND ARBITRATION, Section B. Informal Resolution or Initiating a Grievance.** The Employer and the Union agree that most disputes can and should be resolved by informal, frank discussions between the employee and his/her immediate supervisor, and the parties recognize that the goal of this procedure is to attempt to resolve the grievance as quickly as possible. Therefore, in the case of an individual grievance other than a discharge grievance, the aggrieved employee must first attempt to initiate such discussion with his/her supervisor before filing a formal grievance, unless the employee and the immediate supervisor agree that it is unnecessary, or the supervisor refuses to discuss the matter, or the grievance is directed at the immediate supervisor (e.g., a claim of Discrimination or Harassment under Article 5). . . .

Devor Decl., **Exhibit A**, SEIU CBA, Article 29(B) at p. 49.

**C.   Relevant Collective Bargaining Agreement Provisions – CNA CBA**

The term of the CNA CBA in effect during the relevant years at issue in this lawsuit employment was May 27, 2021, through May 4, 2024.  Devor Decl., ¶ 12, **Exhibits B-C**.  The provisions of the CNA CBA relevant to this Removal include the following:

1. **Wage Rates and Overtime**

> **ARTICLE 7, COMPENSATION AND HOURS OF WORK. Section B. Straight Time Shifts and Workweek.**
>
> 1. The Employer may assign or schedule individual Nurses to alternative straight time shifts of up to twelve (12) hours (e.g., 10- or 12-hour shifts) with the agreement of the Nurses involved.
>
> 2. The Employer may also conduct a secret ballot election up to once per twelve (12) months on a unit-wide or service line (e.g., medical/surgical, critical care, surgical services, women's services, etc.) basis to determine whether the Nurses desire to work alternative straight time shifts. Upon an affirmative vote of a majority of the Nurses in the unit or service line, the Employer may elect to implement alternative shifts on the unit-wide or service line basis. Subject to staffing and the need to match shifts, the

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    10

Employer will attempt to reasonably accommodate a Nurse for whom working an alternative shift presents a hardship at the time alternative shifts are implemented, which accommodation may include a transfer to a vacant position in another unit or department, provided the Nurse has the skills, abilities and experience necessary for the position. In the event that a Nurse cannot locate a vacant eight (8) hour position in another unit or department for which (s)he is qualified and/or in which (s)he is interested, the Nurse may request an additional period of up to ninety (90) calendar days in which to make personal arrangements necessary to accommodate the twelve (12) hour shifts, during which period the Employer will continue the Nurse's eight (8) hour schedule. Notwithstanding the preceding provision for converting to alternative shifts, the Employer will not convert to alternative shifts any Nurse who is employed as of January 14, 2002, the date of ratification by the Union, in a unit or department in which alternative shifts exist, but who is not working such shifts, unless it first notifies the Union of its intention to convert the shifts of such Nurse(s), and, upon the Union's request, bargains over the conversion(s).

Devor Decl., **Exhibit B**, CNA CBA, Article 7(B) at pp. 9-10.

**ARTICLE 7, COMPENSATION AND HOURS OF WORK. Section C, Overtime.**

1. Nurses employed to work eight (8) hour shifts will be employed under the 8/80 plan and will receive overtime premium of one- and one-half times (1 1/2 x) their regular rate for all hours worked in excess of eight (8) hours per work day and for all hours in excess of eighty (80) in a fourteen (14) day pay period, in accordance with the provisions of the Fair Labor Standards Act, as amended.

2. Nurses employed to work alternative shifts (e.g., 10- or 12-hour shifts) will receive overtime premium equal to one- and one-half times (1.5 x) their regular rate for all hours in excess of forty (40) in a workweek.

3. A Nurse will receive premium pay equal to twice (2 x) his/her regular time rate for all hours worked in excess of twelve (12) hours in a workday.

Devor Decl., **Exhibit B**, CNA CBA, Article 7(C) at p. 10.

**ARTICLE 7, COMPENSATION AND HOURS OF WORK. Section D, Workday and Workweek.**

The "workday" and "workweek" will be a standard period of time for all employees. The workweek will begin at 2400 (midnight) on Sunday and continue through 2359 on the following Saturday. The workday is the twenty-four (24) hour period beginning at 2400 (midnight) and continuing through the following 2359.

Devor Decl., **Exhibit B**, CNA CBA, Article 7(D) at p. 10.

**APPENDIX A - WAGES.**

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

11

**Wage Ranges** CNA Bargaining Unit During the life of this Agreement, wages for the classifications covered by this Agreement will be as follows:

| Effective January 9, 2022 - 3.0% Increase | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 20 Year Rate | 25 Year Rate | 30 Year Rate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Registered Nurse | 46.69 | 48.10 | 49.55 | 51.03 | 52.55 | 54.13 | 55.78 | 57.42 | 59.15 | 60.92 | 62.75 | 64.63 | 66.59 | 68.59 | 70.66 |
| RN, Lactation Specialist | 46.69 | 48.10 | 49.55 | 51.03 | 52.55 | 54.13 | 55.78 | 57.42 | 59.15 | 60.92 | 62.75 | 64.63 | 66.59 | 68.59 | 70.66 |
| RN, Diabetes Care Specialist | 47.91 | 49.34 | 50.80 | 52.35 | 53.90 | 55.54 | 57.21 | 58.93 | 60.68 | 62.49 | 64.38 | 66.31 | 68.28 | 70.34 | 72.45 |
| RN, First Assist | 51.60 | 53.15 | 54.74 | 56.38 | 58.07 | 59.79 | 61.62 | 63.50 | 65.35 | 67.31 | 69.34 | 71.42 | 73.57 | 75.78 | 78.05 |

| Effective January 8, 2023 - 3.5% Increase | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 20 Year Rate | 25 Year Rate | 30 Year Rate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Registered Nurse | 48.32 | 49.78 | 51.28 | 52.82 | 54.39 | 56.02 | 57.73 | 59.43 | 61.22 | 63.05 | 64.95 | 66.89 | 68.92 | 70.99 | 73.13 |
| RN, Lactation Specialist | 48.32 | 49.78 | 51.28 | 52.82 | 54.39 | 56.02 | 57.73 | 59.43 | 61.22 | 63.05 | 64.95 | 66.89 | 68.92 | 70.99 | 73.13 |
| RN, Diabetes Care Specialist | 49.59 | 51.07 | 52.58 | 54.18 | 55.79 | 57.48 | 59.21 | 60.99 | 62.80 | 64.68 | 66.63 | 68.63 | 70.67 | 72.80 | 74.99 |
| RN, First Assist | 53.41 | 55.01 | 56.66 | 58.35 | 60.10 | 61.88 | 63.78 | 65.72 | 67.64 | 69.67 | 71.77 | 73.92 | 76.14 | 78.43 | 80.78 |

Devor Decl., **Exhibit B**, CNA CBA, Appendix A at pp. 67-69.

## 2.     Meal and Rest Periods

**ARTICLE 7, WORKWEEK. Section K, Break and Meal Periods.**

1.  Nurses will receive a ten (10) minute paid break for each four (4) hours of work or a major fraction thereof, and an unpaid meal period of thirty (30) minutes for a shift in excess of five (5) hours. The Employer may determine when the breaks and meal period are to be taken, but the meal period will be scheduled or taken near the middle of the scheduled shift where practicable. If it appears to a Nurse that (s)he will not be able to take a break or a meal period as provided for in this section, the Nurse must inform his/her Charge Nurse/supervisor promptly, so that the supervisor may have the opportunity to obtain relief for the employee if practicable. Breaks and the meal period may not be combined, nor may a break be taken at the beginning or end of a shift to alter shift starting or ending times.

2. It is recognized, however, that the nature of the Nurses' patient care duties, the variability of the patients' conditions and needs, as well as changes in census are such that circumstances may not always permit a Nurse to receive a meal period free from all duty. As an exception to the unpaid meal break requirement, when the Nurse's position requires that the Nurse remain on duty during his/her meal period, the Nurse will be paid for the on-duty meal period at the applicable straight time or overtime rate.

3. The Employer is responsible for making meal periods and rest breaks available to nurses, including providing qualified break relief. Qualified break relief shall be a competent Registered Nurse who is immediately available to care for the patients of the Nurse being relieved. The Employer shall provide nurses with a system for reporting missed meal periods and rest breaks. No Nurse shall be disciplined, negatively evaluated, or otherwise retaliated against for not taking breaks when qualified relief is not provided.

Devor Decl., **Exhibit B**, CNA CBA, Article 7(K) at p. 14.

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

12

3.      **Request for Records**

**ARTICLE 24, EMPLOYEE PERSONNEL FILES. Section A, Employee Access.**   A Nurse may inspect his/her own personnel file at reasonable times during normal business hours upon his/her request. The Employer will provide the Nurse with a copy of letters of appreciation, status change forms, performance evaluations and written disciplinary documents before or at the time they are placed in the Nurse's personnel file.

Devor Decl., **Exhibit B**, CNA CBA, Article 24(A) at p. 53.

4.      **Paid Time Off and Sick Leave**

**ARTICLE 8, PAID TIME OFF AND EXTENDED SICK LEAVE. Section A, Purpose of PTO.**  The parties recognize the need to provide eligible employees with paid periods of time away from work to rest and attend to personal needs.  PTO hours are used to provide pay for hours not worked due to:

1. Absences related to personal illness or accident to the extent not covered by disability income plans or ESL.
2. Family needs/responsibilities.
3. Recognized holidays.
4. Vacation days.
5. Other reasons.

Paid leave for bereavement, attendance at educational programs, and jury duty are covered by separate Articles elsewhere in this Agreement.

Devor Decl., **Exhibit B**, CNA CBA, Article 8(A) at p. 18.

**ARTICLE 8, PAID TIME OFF AND EXTENDED SICK LEAVE. Section B, Eligibility for PTO/ESL.**  All Regular Full-time and Regular Part-time Nurses are eligible to participate in the PTO program. PTO hours accrue immediately upon employment or reclassification in a Regular Status as defined in Article 6 above and may be used as they are accrued.

Devor Decl., **Exhibit B**, CNA CBA, Article 8(B) at p. 18.

**ARTICLE 8 – PAID TIME OFF AND EXTENDED SICK LEAVE, Section E, Use of PTO to Cover Personal Illness/Disability.**

PTO hours are used to cover up to the first twenty-four (24) work hours missed due to personal illness/injury, unless the absence qualifies for a waiver of waiting period as outlined in Section F.2. below. If the Nurse has insufficient PTO to cover this period, it is taken off without pay.

Devor Decl., **Exhibit B**, CNA CBA, Article 8(E) at p. 20.

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

5.      **Payment Upon Termination**

**ARTICLE 8, PAID TIME OFF AND EXTENDED SICK LEAVE. Section I, PTO Scheduling. Section 11, Payout of PTO/ESL Upon Termination or Change to Per Diem/Casual Status**. Accrued but unused PTO will be paid to the Nurse upon termination of employment or conversion from Regular status to Per Diem or Casual status. Accumulated ESL will not be paid upon termination or conversion to Per Diem or Casual status; provided, however, that should the Nurse be re-employed in a Regular status or convert from Per Diem or Casual status within twelve (12) months following the Nurse's termination or conversion to Per Diem or Casual status from Regular status, the Nurse's accumulated ESL at the time of such prior termination or conversion will be reinstated.  As an exception to the preceding provision, accumulated ESL will be paid to a maximum of four hundred (400) hours to an employee at termination or retirement if the employee became a regularly scheduled employee on or before May 31, 1998 and is continuously employed by the Employer for twenty (20) years.

Devor Decl., **Exhibit B**, CNA CBA, Article 8(I)(11) at p. 24.

6.      **Grievance and Arbitration**

**ARTICLE 22, GRIEVANCE AND ARBITRATION. Section A, Definitions.** 1. Grievance. A grievance is defined as a dispute arising during the stated term of this Agreement concerning the interpretation or application of any provision of this Agreement, or concerning whether or not discipline, including discharge, is for just cause, as defined in Article 19, Section B of this Agreement.

Devor Decl., **Exhibit B**, CNA CBA, Article 22(A)(1) at p. 48.

**ARTICLE 22, GRIEVANCE AND ARBITRATION. Section B, Procedure.** It is the shared view of the Employer and the Union that most disputes should be resolved by informal, frank discussions between the Nurse and his/her immediate supervisor, and the parties recognize that the goal of this procedure is to attempt to resolve the grievance at the lowest level as quickly as possible. Therefore, in the case of an individual grievance other than a discharge grievance, the Nurse must initiate such discussions prior to filing a formal complaint, unless the Nurse and the immediate supervisor agree that it is unnecessary, or unless the grievance is directed at the immediate supervisor (i.e., a claim of discrimination under Article 4, Section A). The Nurse may elect to be accompanied by a Nurse Representative. If the result of these discussions is unsatisfactory, the Nurse may elect to initiate the grievance resolution procedure set forth below. A grievant may be accompanied by a Nurse Representative or a Union Representative at meetings held at any step of this procedure. . . .

Devor Decl., **Exhibit B**, CNA CBA, Article 22(B) at pp. 48-49.

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    14

1   **V.   LEGAL ANALYSIS**

2         The Complaint seeks PAGA penalties that are derivative of various alleged violations of the

3   California Labor Code and IWC Wage Orders.   For PAGA claims, the Section 301 preemption

4   analysis turns on whether the underlying Labor Code claims are preempted.   *See Radcliff v. San Diego*

5   *Gas & Elec Co.,* 519 F. Supp. 3d 743, 751-752 (S.D. Cal. 2021) (denying plaintiff's motion to remand,

6   as a PAGA action based on a preempted labor code claim is preempted under Section 301); *Braswell*

7   *v. AHMC San Gabriel Valley Med. Ctr. LP,* 2022 WL 707206, *4 (C.D. Cal. Mar. 8, 2022) (denying

8   motion to remand PAGA case because the defendants' CBA with the aggrieved employees satisfy the

9   requirements in section 514 and the Plaintiff's meal break is completely preempted by section 301 of

10  the LMRA and the court had federal jurisdiction over the claim); *Chatman v. Wedriveu, Inc.* 2022 U.S.

11  Dist Lexis 199533 at *18-19 (holding that court had jurisdiction over the PAGA case because

12  plaintiff's PAGA claims are partly derivative of preempted overtime, meal period, and sick leave

13  claims); *Jimenez v. Young Mkt. Co.,* 2021 U.S. Dist. LEXIS 242424 at *19 (N.D. Cal. Dec. 20, 2021)

14  ("[I]f there are multiple claims underlying the sole PAGA claim, the district courts consider the

15  preemption issue for each claim separately"); *Rodriguez v. USF Reddaway Inc.,* 2022 WL 18012518

16  at *5 (E.D. Cal. Dec 30, 2022) (holding that the court has federal question jurisdiction over plaintiff's

17  PAGA claim to the extent it was based on preempted overtime, meal period, and failure to timely pay

18  wages claims); *Sachs v. Pankow Operating, Inc.,* 2022 U.S. Dist. Lexis 29328 *15 (C.D. Cal Feb. 16

19  2022) (holding that court had jurisdiction over plaintiff's PAGA claim because it had jurisdiction over

20  two underlying labor code claims); *Blackwell v. Com. Refrigeration Specialists, Inc.* 2021 U.S. Dist.

21  LEXIS 119212 *10-13 (E.D. Cal. June 25, 2021) (finding that Plaintiff's argument that section 301

22  preemption doesn't apply because he asserted a pure PAGA action was unpersuasive because

23  plaintiff's claim rests upon multiple discreet claims and the court typically applies the Section 301

24  analysis to each discreet claim); *Franco v. E-3 Sys.* 2019 U.S. Dist. LEXIS 195396, *11 (N.D. Cal

25  Nov. 8, 2019) ("PAGA claims are derivative of the predicate California Labor Code violations, and

26  therefore rise and fall with those underlying claims.").   Because the underlying Labor Code claims

27  are, in large part, preempted by Section 301, Plaintiffs' entire PAGA action is preempted.

28         Plaintiffs' overtime, Labor Code Section 204, vacation pay upon termination, and sick pay

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    15

claims are preempted under Section 301 because such claims are necessarily contractual claims under the CBAs; California state law does not apply to such claims because of an express exemption in the Labor Code. Plaintiffs' derivative claims (for minimum wages, waiting time penalties under Labor Code Section 203, and for wage statement penalties under Labor Code Section 226), are preempted under Section 301 because such claims rise or fall based on the underlying substantive (and preempted) overtime and sick pay claims. With regard to Plaintiffs' minimum wage, meal, and rest break claims, these claims are also preempted by Section 301 because the resolution of such claims requires interpretation of the CBA. Lastly, as to Plaintiffs' minimum wage claim, as well as their expense reimbursement claim and any other claims which are not otherwise preempted, the Court has supplemental jurisdiction over these claims because they are part of a single PAGA cause of action and form part of the same case or controversy as Plaintiffs' preempted claims. Thus, this entire action is preempted by Section 301.

### A.     The Section 301 Preemption Analysis – Legal Standard

Section 301 completely preempts all claims that are based on, or require the interpretation of, a collective bargaining agreement. *United Steelworkers of America v. Rawson*, 495 U.S. 362, 368–69 (1990); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–11 (1985); *Associated Builders & Contractors, Inc. v. Local 302 International Brotherhood of Electrical Workers*, 109 F.3d 1353, 1356–57 (9th Cir. 1997) (Section 301 is construed "quite broadly to cover most state-law actions that require interpretation of labor agreements").

Section 301 preemption furthers two important federal policies. First, it ensures that the interpretation of collective bargaining agreements remains uniform and independent of state law. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962) (inconsistent interpretations would "inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements"). Second, the complete preemption doctrine gives effect to the parties' mutual promise to resolve disputes through the grievance-arbitration process and furthers the strong federal policy that labor disputes "remain[] firmly in the arbitral realm." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 411 (1988). This Court has subject matter jurisdiction over—and thus a defendant may properly remove—any ostensible state law claim preempted by Section 301. *Franchise Tax Board v.*

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                16

*Construction Laborers*, 463 U.S. 1, 24 (1983); *Allis-Chalmers Corp.*, 471 U.S. at 220 (if preempted, the "claim must either be treated as a § 301 claim ... or dismissed").

Step One.  Under the Section 301 preemption analysis, courts must first inquire whether the relief requested by a plaintiff "involves a right [that] exists solely as a result of the CBA."  *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (internal citations and quotations omitted).  Under *Curtis*, where an asserted Labor Code or Wage Order claim is covered by an available CBA exemption – such that there exists no valid underlying state law claim – the Section 301 preemption inquiry is resolved at this first step.  This is because, in the case of a state law overtime claim (for example), if Labor Code Section 510 and 511 do not apply (due to the application of the CBA exemption found in Labor Code Section 514), any pleaded overtime claim is necessarily a contractual claim governed by the CBA.  *See, e.g., Giles v. Canus Corp.*, 2022 WL 3370793, *4-5 (N.D. Cal. Aug. 16, 2022) (applying *Curtis*).

Step Two.  If, and only if, there is no preemption found at the first step of the analysis, courts proceed to the second step of the Section 301 preemption analysis, which asks "whether a plaintiff's state law right is substantially dependent on analysis of the CBA."  *Curtis*, 913 F.3d at 1153.  Under this second step, even where there is no applicable CBA exemption, Section 301 preemption still applies if the resolution of a plaintiff's minimum wage claim (for example) requires interpretation of the CBA.  *See Mellon v. Universal City Studios*, LLC, 625 F. Supp. 3d 1007, 1014-1016 (2022) (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks through Article 27."); *Giles*, *supra*, 2022 WL 3370793, *6 (holding minimum wage claim preempted because resolving that claim would require an interpretation of terms "actual time worked" and "show-up pay" as used in the CBA).

Notably, whether Plaintiffs' operative pleading mentions the CBA is not relevant to the Section 301 preemption analysis.  *Curtis*, 913 F.3d at 1152; *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 750 (S.D. Cal. 2021); *Mellon*, 625 F. Supp. 3d at 1014; *Ayon v. Zero Waste Sols., Inc*, 2021 WL 4065716, *3 (E.D. Cal. Sept. 7, 2021).

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                                                17

**B.** **Plaintiffs' Overtime Claim is Preempted Under *Curtis* Step One**

Plaintiffs assert that Enloe failed to pay overtime compensation due to the "aggrieved employees." Compl., ¶¶ 12-14. However, Plaintiffs have no valid state law overtime claim because the Labor Code Section 514 exemption applies. Section 514 provides an overtime exemption where:

> "an employee [is] covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

First, both the SEIU and CNA CBAs provide for a range of wages, hours, and working conditions. *See* provisions quoted in Sections IV(B)(1) and IV(C)(1). Second, the CBAs provide premium wage rates for all overtime hours worked. *Id.* Third, the CBAs provide hourly rates of pay in excess of 30 percent above the applicable California minimum wage. *Id.* During Plaintiff Lovgren's final year of employment, he earned a base wage rate of $29.46. *Id.*

In addition, Labor Code section 510 provides that its requirements "do not apply to the payment of overtime compensation to an employee working pursuant to . . . (2) [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to [California Labor Code] Section 514." Cal. Lab. Code § 510(a)(2). Both the SEIU and CNA CBAs provide for alternative workweek schedules for some employees. *Id.*

Accordingly, the Section 514 overtime exemption, which has been construed and applied broadly by state and federal courts, applies here. S*ee Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 109 (2014) (where Section 514's requirements are met, an employer is only required to pay for overtime as defined by the collective bargaining agreement and Section 510 simply does not apply); *Curtis*, 913 F.3d at 1154-55 ("While Section 510 establishes a default definition of overtime applicable to non-unionized employees, unionized employees 'have sought and received alternative wage protections through the collective bargaining process'") (*citing Vranish* and *quoting Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000)).

Where, as here, the Section 514 exemption applies to a union-represented plaintiff, the "right to overtime 'exists solely as a result of the CBA,'" and therefore "is preempted under § 301." *Curtis*, 913 F.3d at 1154; *accord, e.g., Giles*, *supra,* 2022 WL 3370793, *4; *Braswell v. AHMC San Gabriel*

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    18

*Valley Med. Ctr. LP*, 2022 U.S. Dist. LEXIS 42113, *11 (C.D. Cal. Mar. 8, 2022); *Rodriguez v. Gonsalves & Santucci, Inc.*, 2022 WL 161892, *4 (N.D. Cal. Jan. 18, 2022) (*citing Curtis*, 913 F.3d at 1153-55); *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1203-04 (C.D. Cal. 2015) (same). Accordingly, Plaintiffs' PAGA cause of action for unpaid overtime is preempted under Section 301.

**C.    Plaintiffs' Labor Code Section 204 Claim is Preempted by Section 301.**

The Complaint also alleges that Enloe violated Labor Code Section 204 by failing to timely pay its employees for all hours worked. Compl., ¶¶ 19-20. However, Labor Code Section 204 does not apply "when employees are covered by a collective bargaining agreement that provides different pay arrangements." Lab. Code § 204(c). Thus, as is the case with overtime claims, California state law wage payment claims under Section 204 are waivable and negotiable as to Union-represented employees. *Hall*, *supra*, 146 F. Supp. 3d at 1203-04 (holding Section 204 claim preempted under Section 301 where CBA contained its own pay timing rules).

Here, the SEIU CBA provides for the timing of wage payments – and specifically, for two-week payroll periods. *See* Section IV(B)(1). Thus, Plaintiffs' Section 204 claim in their PAGA cause of action is preempted under Section 301. *See Hall*, 146 F. Supp. 3d at 1203-04; *accord Bradford v. Prof'l Tech. Sec. Servs.*, 2020 WL 2747767, *5 (N.D. Cal. May 27, 2020) ("Because the CBA here provides for a different pay arrangement than the statute, [plaintiff's] right to timely payment exists solely as a result for the CBA and is preempted."); *Ariola v. Raytheon CA Techs Corp* 2023 U.S. Dist. LEXIS 158377 *21-*25 (C.D. Cal., September 6, 2023) (finding that a bi-weekly pay arrangement is distinct from the section 204(a) requirement to make semi-monthly payments, and further holding that [Plaintiff's] claim under Section 204 was preempted).

**D.    Plaintiffs' Labor Code Section 246 Claim is Preempted by Section 301.**

The Complaint also alleges that Enloe violated Labor Code Section 246 by failing to pay its employees sick pay at the regular rate of pay. Compl., ¶¶ 21-22. However, Labor Code 246 does not cover an "employee" who is covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for paid sick days or a paid leave or paid time off policy that permits the use of sick days for

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    19

those employees, final and binding arbitration of disputes concerning the application of its paid sick days provisions, premium wage rates for all overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate." Thus, as is the case with overtime and wage timing claims, California state law sick pay claims under Section 246 are waivable and negotiable as to Union-represented employees.

Here, as established above: (i) both CBAs provide for a range of wages, hours, and working conditions (*see* provisions quoted in Section IV(B)(1) and IV(C)(1)); (ii) both CBAs provide premium wage rates for all overtime hours worked (*id.*); and (iii) both CBAs provide hourly rates of pay in excess of 30 percent above the then-current California minimum wage (*id.*). Finally, Article 16 of the SEIU CBA and Article 8 of the CNA CBA require paid time off, including sick leave. *See* Sections IV(B)(4) and IV(C)(4). Thus, Plaintiffs' Section 246 claim in their PAGA cause of action is preempted under Section 301.

### E.  Plaintiffs' Labor Code Section 227.3 Claim is Preempted by Section 301.

The Complaint also alleges that Enloe violated Labor Code Section 227.3 by failing to pay its employees their "vested vacation time as wages due upon employment termination, in violation of the California Labor Code, Sections 201, 202, 203 and 227.3." Compl., ¶ 31. However, Labor Code 227.3 expressly states that it applies "[u]nless otherwise provided by a collective-bargaining agreement" – in other words, that a CBA determines the rules with respect to whether and what vacation is paid out to an employee covered by a CBA. Here, as established above, both the SEIU and CNA CBAs provide for a range of wages, hours, and working conditions. *See* provisions quoted in Sections IV(B)(5) and IV(C)(5). As such, the Court must construe the vacation provisions of the CBAs to determine what, if any, vacation pay was required to be paid out to employees at the time of termination. Thus, Plaintiffs' Section 227.3 claim in their PAGA cause of action is preempted under Section 301.

### F.  Plaintiffs' Derivative Waiting Time Penalty, Untimely Wage, and Wage Statement Claims Are Preempted Under *Curtis* Step One.

Plaintiffs' claims alleging waiting time penalties under Labor Code Sections 201-203, untimely wages under Labor Code Section 204, and wage statements under Labor Code 226 are all,

in whole or in part, derivative of Plaintiffs' claims that are preempted under Section 301 for the reasons described above.  *See* Compl., ¶¶ 18-24.  All of these derivative claims are preempted under Section 301 for this reason.  *Giles*, *supra,* 2022 WL 3370793, *6-7; *Rodriguez*, *supra,* 2022 WL 161892, *6; *Mellon*, *supra*, 625 F. Supp. 3d 1007, 1014 ; *Jimenez v. Young's Mkt. C*o., 2021 WL 5999082, *13 (N.D. Cal. Dec. 20, 2021); *Vasquez v. Packaging Corp. of Am*., 2019 WL 4543106, *4 (C.D. Cal. Jun. 7, 2019).

### G.  Plaintiffs' Minimum Wages Claim Is Preempted Under *Curtis* Step One and Step Two.

Plaintiffs' Minimum Wage claim is also preempted because the claim arises out of Plaintiffs' preempted overtime claim and requires interpretation of the CBA.  Even if it were not preempted, the Court would have supplemental jurisdiction over this claim.

Plaintiffs allege that employees "forfeit minimum wage, overtime wage compensation, and off-duty meal breaks by working without their time being correctly recorded and without compensation at the applicable rates."  Compl., ¶ 12, 17.

Plaintiffs do not allege that they ever worked a day to which overtime obligations would not attach *if* Plaintiffs had worked more time than that for which they were paid (*e.g.*, Plaintiff do not allege that they ever worked less than 8 hours in a day).  In all respects, Plaintiffs mix together the alleged factual bases for the minimum wage and overtime claims, without differentiation.  Compl., *passim*.  Collectively, the claims in Paragraphs 12 and 17 of the Complaint, and the lack of any additional supporting detail for the minimum wage claim, make it clear that Plaintiffs' so-called "minimum wage" claim is inseparable from Plaintiffs' overtime claim.

Accordingly, Plaintiffs' minimum wage claim, lacking any independent life, is preempted for the same reason as Plaintiffs' overtime claim.  *See Chavez v. Smurfit Kappa N. Am. LLC,* 2018 WL 8642837, *4 (C.D. Cal Oct 17, 2018) (holding that a minimum wage claim, that could only arise out of plaintiff's preempted overtime claim, was also preempted under section 301); *and see also Rodriguez*, *supra*, 2022 WL 161892, *6 ("because the claim for unpaid minimum wages substantially depends on an analysis of the CBA, the LMRA preempts the claim."); *Giles*, *supra*, 2022 WL 3370793, *6; *Mellon*, *supra,* 625 F. Supp. 3d 1007, 1014.

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

21

In the alternative, Plaintiffs' minimum wage claim is preempted under *Curtis* Step Two because interpretation of the various provisions of the CBA requiring pay for all hours worked is required to resolve the minimum wage claim. *See Rodriguez*, *supra*, 2022 WL 161892, at *5 (finding, where plaintiff alleged "defendant failed to pay minimum wages for off-the-clock activity," resolution of minimum wage claim required, "[a]t minimum, ... interpretation of CBA terms such as 'actual hours worked' and 'show up expenses'"); *Giles*, *supra*, 2022 WL 3370793, at *6 (minimum wage claim preempted because resolving that claim would require interpretation of contractual terms "actual time worked" and "show-up pay"); *Mellon*, *supra*, 625 F. Supp. 3d 1007, 1014 (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks").

In any event, if the Court finds that any portion of Plaintiffs' minimum wage claim is not preempted, the Court has supplemental jurisdiction because any non-preempted claims form part of the same case or controversy as the preempted claims. *See Gay v. Pac Steel Grp*, 2021 WL 2917095, *3 (N.D. Cal Jun. 15, 2021) (finding supplemental jurisdiction for minimum wages, unpaid wages, non-compliant wage statements, and other claims when overtime, meal period, and rest period claims were preempted).

### H.    Plaintiffs' Meal and Rest Claims Are Preempted Under *Curtis* Step Two.

Plaintiffs' claims relating to meal and rest breaks allege that Enloe failed to provide legally-required off-duty meal and rest breaks to employees, and failed to properly compensate employees for non-compliant breaks. Compl., ¶¶ 12-15. Section 301 preemption applies to Plaintiffs' meal and rest period break claims because this "state law right is substantially dependent on analysis of the CBA." *See Curtis*, 913 F.3d at 1153. Here, both the SEIU and CNA CBAs provide detailed rules for meal and rest periods. *See* provisions quoted in Sections IV(B)(2) and IV(C)(2).

### I.    The Court Has Supplemental Jurisdiction Over Plaintiffs' Remaining Claims

If this Court finds that any claims in the Complaint are not preempted by Section 301, the entire action is still removable under 28 U.S.C. § 1441(c) because this Court has supplemental jurisdiction under 28 U.S.C. § 1367. All claims in the Complaint are sufficiently related to form part of the same case or controversy; indeed, here, all claims are part of a single PAGA cause of action.

*See Giles*, *supra,* 2022 WL 3370793, *6 (court exercised supplemental jurisdiction over non-preempted rest break claim where overtime, meal break and minimum wage claims were preempted by Section 301); *Jimenez*, *supra,* 2021 WL 5999082, *21 (exercising supplemental jurisdiction over non-preempted wage claims because such claims "arose from the same working conditions and relationship" as the preempted overtime and meal period claims).

## VI.   CONCLUSION

For the reasons provided herein, Defendant hereby removes this action from the California Superior Court, in and for the County of Butte, to the United States District Court, Eastern District of California.   Defendant respectfully requests that this Court retain jurisdiction for all further proceedings.


Dated: April 16, 2024                              LITTLER MENDELSON, P.C.


                                                   */s/ Barbara A. Blackburn*
                                                   Barbara A. Blackburn
                                                   Douglas L. Ropel
                                                   Lauren J. Orozco
                                                   Attorneys for Defendant
                                                   ENLOE MEDICAL CENTER

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    23